UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BOULEVARD RE HOLDINGS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-cv-01288-SEP |
| ) | |
| MIXON INSURANCE AGENCY, INC., ) | |
| ) | |
| Defendant. ) | |

### **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Mixon Insurance Agency, Inc.'s (Mixon's) Motion for Summary Judgment as to Plaintiff Boulevard RE Holdings, LLC (Boulevard RE), Doc. [34]. The motion is fully briefed. Docs. [36], [41], [43]. For the reasons set forth below, Mixon's Motion for Summary Judgment is granted.

#### FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the same set of circumstances addressed in *Berkley Assurance Co. v. BMG Service Group, LLC.*, 2020 WL 5632440 (E.D. Mo. Sept. 21, 2020) (*Berkley*). In the prior litigation, Berkley filed a declaratory judgment action against Boulevard RE, BMG Service Group, LLC (BMG), Jon E. Fuhrer Company, and Lucia Hevierova in order to determine potential liabilities and entitlements with respect to an insurance policy issued by Berkley on property owned by Boulevard RE. Because many of the facts relevant to this case were extensively recited in the Court's prior Memorandum and Order entered in that matter, the Court does not relay the entire history of the case here but adopts the facts as stated in its earlier Memorandum and Order. *See Berkley*, at *1-3. Additional facts are provided below.

Boulevard RE is the owner of commercial property located at 2543 N. Grand Avenue in St. Louis, Missouri (the Property). Doc. [35] ¶ 1. On June 23, 2017, Boulevard RE entered into a contract for deed with BMG Service Group, LLC (BMG), which operated a bar and grill on the Property, pursuant to which Boulevard RE would sell the Property to BMG. *Id*. ¶ 2. Boulevard RE retained legal title to the Property after executing the contract for deed, and the title was to remain with Boulevard RE until BMG paid the balance of the purchase price in full. *Id*. ¶ 1. The contract required that BMG obtain, at its own expense, fire insurance in the amount of the purchase price, with the policy to be issued in Boulevard RE's name. Doc. [40] ¶ 3.

1

In June of 2017, pursuant to the terms of BMG's contract with Boulevard RE, BMG sought to insure the Property for $1,275,000.00  Doc. [27] ¶¶ 7–9.  Boulevard RE alleges that BMG requested that Mixon name Boulevard RE as a "named insured, loss payee, additional insured, and mortgagee" on the insurance policy.  Doc. [40] ¶ 4.  However, it was later discovered that BMG failed to obtain the policy of fire insurance issued in Boulevard RE's name.  Docs. [35] ¶ 6; [40] ¶ 6.  Instead, Berkley issued the Policy insuring the Property on behalf of BMG, without listing Boulevard RE as a mortgagee.  Doc. [35] ¶ 5.  No one, including Mixon, informed Boulevard RE that it was not included as a mortgagee on the Policy insuring the Property.  Doc. [40] ¶¶ 2–3.

On June 30, 2018, a fire destroyed the Property.  Docs. [35] ¶ 7; [40] ¶ 7.  The Property's automatic sprinkler system, which would have prevented the fire from destroying the Property, was not operative at the time of the fire.  *See Berkley,* 2020 WL 5632440, at *2 (E.D. Mo. Sept. 21, 2020).  The Policy contained a Fire Protective Safeguard Endorsement, which required, as a condition of insurance, that an automatic sprinkler system be maintained in complete working order at the Property, and which excluded all coverage for loss or damage by fire if the sprinkler system was inoperative.[1]  *Id.*

---

[1]  The Policy contained the following relevant endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FIRE PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:
COMMERCIAL PROPERTY COVERAGE PART

### SCHEDULE*

| Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 1 | P-1, P-9 |

**"P-1" Automatic Sprinkler System,** including related supervisory services. Automatic Sprinkler System mean

a. Any automatic fire protective or extinguishing system, including connected:
  (1) Sprinklers and discharge nozzles;
  (2) Ducts, pipes, valves and fittings;
  (3) Tanks, their component parts and supports; and
  (4) Pumps and private fire protection mains.

On November 1, 2018, Boulevard RE submitted a proof of loss to Berkley, claiming its interest in the Property was as a "lender." Doc. [35] ¶ 8. Berkley then filed a lawsuit in this Court seeking a declaratory judgment that there was no coverage under the Policy for Boulevard RE, and that Berkley had no obligation under the Policy to pay Boulevard RE. *See Berkley*, Case No. 4:18-cv-02082, Doc. [1] at 11. Boulevard RE subsequently filed a Third-Party Complaint against Mixon in the prior litigation, alleging breach of contract and negligent procurement of insurance. *Id*. Doc. [61]. Boulevard RE claimed that BMG had requested that Boulevard RE be named in the Policy as a mortgagee of the Property, and that Mixon had negligently failed to include Boulevard RE in the Policy. *Id.* ¶ 9; Doc. [93] at 10-11. Berkley, Fuhrer, and Hevierova moved for summary judgment against Boulevard RE, in response to which this Court entered judgment against Boulevard RE, holding that (i) Boulevard RE was not entitled to recover as an additional insured or as a mortgagee under the Policy; (ii) had Boulevard RE been named as a mortgagee, that would have constituted a material misrepresentation, thus violating Missouri law and voiding the Policy; and (iii) even if Boulevard had been listed as an "additional insured" under the Policy, it would not have been entitled to coverage under the Policy due to non-compliance with the policy's Fire Protective Safeguard Endorsement, which would have barred Boulevard RE from any entitlement to the insurance proceeds under the terms of the Policy. *Berkley,* 2020 WL 5632440, at *8–9.

In the interest of judicial economy, this Court severed Boulevard RE's claims against Mixon and scheduled a new Rule 16 Scheduling Conference to resolve the dispute between Boulevard RE and Mixon. *Id.* at *9–10. Boulevard RE filed its Complaint on September 21, 2020, which it later amended on June 28, 2021. Docs. [1], [27]. On July 14, 2021, Mixon filed the instant Motion for Summary Judgment, seeking summary judgment on all claims. Doc. [34].

---

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

1. Knew of any suspension, malfunction or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact;
2. Failed to maintain any protective safeguard listed in the Schedule above in complete working order;
3. Failed to activate the safeguard system;
4. Deactivated the safeguard system; or
5. Failed to pay service fees or costs as required for a private security or public or volunteer fire department to respond to any protective safeguard shown above.

*See* Case No. 4:18-cv-02082, Doc. [1-2] at 56-57.

PARTIES' ARGUMENTS

Mixon argues that the decision in *Berkley* collaterally estops Boulevard RE from relitigating three matters of fact and law that were decided by this Court in the prior litigation: (1) Boulevard RE was not a mortgagee of the Property; (2) had Boulevard RE been named a mortgagee on the Property, that would have violated Missouri law and voided the insurance policy; and (3) if Boulevard RE had been named an additional insured in the Policy, the Fire Protective Safeguard Endorsement of the Policy would have precluded Boulevard RE from recovering under the Policy. Docs. [36] at 7; [40] ¶¶ 9-12.

Next, Mixon argues that it is entitled to judgment as a matter of law on both counts of Boulevard RE's First Amended Complaint because, under either a theory of contract liability or negligent procurement, Boulevard RE did not suffer a pecuniary loss that is attributable to any action or inaction by Mixon. That is because (1) Boulevard RE could not have been included as a mortgagee, as that would have voided the insurance policy, and (2) had Boulevard RE been included as an additional insured, the Fire Protective Safeguard Endorsement would nonetheless have barred Boulevard RE's recovery. Doc. [36] at 12–13.

Boulevard RE opposes Mixon's Motion for Summary Judgment, arguing that this Court's decision in *Berkley* does not give rise to collateral estoppel because Boulevard RE's claims involve matters of fact and law that are not identical to those decided in *Berkley*. Doc. [41] at 1-2. To wit, *Berkley* did not reach whether Mixon was negligent when it (1) failed to discover and inform BMG or Boulevard RE that Boulevard was not actually a mortgagee and the policy was not obtained in the manner requested; and (2) failed to notify Boulevard RE and/or BMG of the Fire Protective Safeguard Endorsement.

Mixon replies that it does not seek to use collateral estoppel to address the new issues raised by Boulevard RE in its First Amended Complaint. Doc. [43] at 2. Rather, Boulevard RE should be estopped only from relitigating those matters of fact and law that were previously decided in *Berkley*. *Id*. at 2-3. Still, Mixon argues, no new issue raised by Boulevard RE negates its right to judgment as a matter of law on all claims. *Id.* at 3.

MOTION FOR SUMMARY JUDGMENT

I. **Legal Standard**

Summary judgment is proper where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

4

56(a). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue is genuine only if it "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed. R. Civ. P. 56(e). "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Celotex,* 477 U.S. at 322-23. *See also Henthorn v. Capitol Communications, Inc.,* 359 F.3d 1021, 1026 (8th Cir.2004) ("Mere allegations not supported with specific facts are insufficient to establish a material issue of fact and will not withstand a summary judgment motion."). As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

      The test for materiality is whether the disputed fact would affect the outcome of the suit. *Id*. "An issue of material fact is genuine if it has a real basis in the record" and "a genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citations omitted). When a judge decides whether to grant a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,*477 U.S. at 249. To make this determination, all facts must be viewed by a court "in the light most favorable to the non-moving party." *Leonetti's Frozen Foods, Inc. v. Rew Mktg., Inc.*, 887 F.3d 438, 442 (8th Cir. 2018) (quoting *Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 828 (8th Cir. 2013). However, summary judgment is appropriate where a party cannot proffer admissible evidence in support of each essential element of his claim. *See Celotex*, 477 U.S. at 322 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## II.  Discussion

### A. Boulevard RE is collaterally estopped from arguing that it was the mortgagee of the Property, or that it would have merited the insurance proceeds had it been listed as a mortgagee or additional insured under the insurance policy.

Mixon seeks to estop Boulevard RE from relitigating the factual and legal issues that were adjudged in *Berkley*, including:  (1) Boulevard RE was not a mortgagee on the property at issue; (2) naming Boulevard RE as a mortgagee on the Policy would have introduced an intentional material misrepresentation, thus violating Missouri law and voiding the Policy; and (3) even had Boulevard RE been included as an "additional insured" under the Policy, it would not have been entitled to coverage because the Fire Protective Safeguard Endorsement would still have precluded recovery.

Issue preclusion, also known as collateral estoppel, "foreclos[es] successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment."  *Herrera v. Wyoming*, 139 S. Ct. 1686, 1697 (2019) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–749 (2001)) (alteration in original).  If a plaintiff's claims were defeated in earlier litigation, the defendant can raise the affirmative defense of issue preclusion to prevent further litigation of such claims.  *See Lynch v. Nat'l Prescription Adm'rs, Inc.*, 787 F.3d 868, 872 (8th Cir. 2015) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008)).  Regardless of whether the claims in the current litigation are identical to the prior litigation, issue preclusion will bar further litigation of previously decided matters of law or fact.  *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 912 F.3d 445, 452 (8th Cir. 2018).

When a federal court sits in diversity, the court must "apply state substantive law in deciding whether to apply collateral estoppel or issue preclusion[.]"  *Ideker v. PPG Indus., Inc.*, 788 F.3d 849, 852 (8th Cir. 2015) (quoting *Austin v. Super Valu Stores, Inc.*, 31 F.3d 615, 617 (8th Cir. 1994)).  Under Missouri law, a party must satisfy four elements to raise the affirmative defense of issue preclusion:

> (1) the issue in the present case is identical to an issue decided in the prior adjudication;
>
> (2) the court in the prior adjudication rendered a judgment on the merits;
>
> (3) the party against whom collateral estoppel is asserted is the same party or in privity with a party in the prior adjudication; and

6

(4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

*Newger v. First Contact, LLC.*, 2020 WL 3288130, at *2 (E.D. Mo. June 18, 2020) (quoting *Premium Investments, LLC v. Lowther Johnson, Attorneys at Law, LLC*, 575 S.W.3d 744, 753 (Mo. Ct. App. 2019)).  Those four elements are satisfied in this case.

      i. <u>The issues Mixon seeks to collaterally estop are identical to those previously adjudicated.</u>

The issues that Mixon seeks to collaterally estop Boulevard RE from raising in the present litigation are identical to the matters previously adjudicated by this Court in *Berkley*.  *See Berkley*, 2020 WL 5632440, at *8 ("Boulevard RE is not, in fact, a mortgagee . . . . Reformation of the Policy to name Boulevard RE as a mortgagee would therefore introduce an intentional material misrepresentation, violating Missouri law and voiding the contract."); at *id.* at *9 ("[R]eformation of the Policy to make Boulevard RE an "additional insured" would not create a genuine dispute as to its right to payment under the Policy because Boulevard RE would be subject to (and precluded from recovering by) the Fire Protective Safeguard Endorsement.").

Boulevard RE's First Amended Complaint does include issues that are not identical to those decided upon in *Berkely*, but that does not bar the affirmative defense of issue preclusion as to those matters that are identical to those previously adjudicated.  *See United States v. Karlen*, 645 F.2d 635, 638 (8th Cir. 1981) ("[T]he fact that the second action included new issues and a different cause of action did not in itself make issue preclusion inappropriate.").  Because Boulevard RE's eligibility for insurance coverage under the policy as either a mortgagee or an additional insured was decided in *Berkley*, Boulevard RE may not relitigate it here.

      ii. <u>This Court decided the issues to be estopped on the merits.</u>

In *Berkley*, this Court reached a decision on the merits that Boulevard RE was not included under the insurance policy as either a "mortgagee" or a "named insured." *Berkley*, 2020 WL 5632440, at *7-8.  "A judgment on the merits is one rendered after argument and investigation and when it is determined which party is in the right, as distinguished from a judgment rendered upon some preliminary or technical point, or by default, and without trial." *Metal Exch. Corp. v. J.W. Terrill, Inc.*, 173 S.W.3d 672, 677 (Mo. Ct. App. 2005) (quoting *Hayes v. United Fire & Cas. Co.*, 3 S.W.3d 853, 856 (Mo. Ct. App. 1999)).  "It is well established that summary judgment is a final judgment on the merits for purposes of *res*

7

*judicata.*" *Dicken v. Ashcroft*, 972 F.2d 231, 233 n.5 (8th Cir. 1992) (citing *King v. Hoover Group, Inc.*, 958 F.2d 219, 222 (8th Cir.1992)). In *Berkley*, this Court granted the movants' Motion for Summary Judgment, finding against Boulevard RE. *Berkley*, 2020 WL 5632440, at *9. Per *Dicken*, this Court's decision on the prior Motion for Summary Judgment constitutes a decision on the merits.

                iii.   <u>Boulevard RE was a party to the previous litigation</u>.

Boulevard RE was a party to the previous adjudication that decided issues that are identical to issues raised the present litigation. In *Berkley,* Plaintiff Berkley Assurance Company and Defendants John E. Fuhrer Company and Lucia Hevierova brought a Motion for Summary Judgment against Boulevard RE. *Berkley*, 2020 WL 5632440, at *9.

                iv.   <u>Boulevard RE had a full and fair opportunity to litigate the issues addressed in the previous litigation.</u>

Boulevard RE had a full and fair opportunity to litigate the issues that Mixon now seeks to estop. Missouri courts weigh four factors when determining if a party had a full and fair opportunity to litigate an issue in prior litigation: (1) whether the non-moving party had a strong incentive to litigate in the previous litigation; (2) whether the non-moving party has access to procedural opportunities that were not available in the first action; (3) whether the judgment upon which estoppel rests is inconsistent with other rulings of the court; and (4) whether the first action's forum "may have substantially inconvenienced" the non-moving party. *Miller v. Pool and Canfield, Inc.*, 800 S.W.2d 120, 125 (Mo. Ct. App. 1990), *followed by Woods v. Mehlville Chrysler-Plymouth*, 198 S.W.3d 165, 169 (Mo. Ct. App. 2006).

In the case at bar, every factor of *Miller*'s test weighs in favor of Mixon. First, Boulevard RE had a strong incentive to litigate in *Berkley*, as $1,275,000.00 of insurance proceeds were at stake. Second, Boulevard RE has no more procedural opportunities in the present litigation than in the previous litigation, as both controversies were litigated in this court. Third, no one has suggested that the judgment in *Berkley* is inconsistent with other rulings of this Court. Finally, considering that both *Berkley* and the present litigation occurred in the same venue without any objection, this court's exercise of jurisdiction in the previous venue did not substantially inconvenience Boulevard RE.

Mixon satisfies all four elements under Missouri law to qualify for collateral estoppel. Considering the foregoing, Boulevard RE is estopped from relitigating the legal and factual

8

issues regarding (1) whether Boulevard RE was the mortgagee of the Property, (2) whether naming Boulevard RE as a mortgagee on the insurance policy would have voided the policy, and (3) whether naming Boulevard RE as an additional insured would have allowed it to receive the proceeds of the insurance policy, despite the Fire Protective Safeguard Endorsement of the insurance policy.

### B.  Mixon did not cause Boulevard RE's pecuniary loss.

Mixon asserts that it is entitled to judgment as a matter of law as to both counts of Plaintiff's First Amended Complaint. Boulevard RE alleges two causes of action: Count I for negligent procurement of insurance, and Count II for breach of contract. Because the elements of the two claims are similar and both claims falter for the same reason, the Court will discuss them together.

Missouri courts have long held that a broker or agent who undertakes to procure insurance for another for compensation owes a duty of reasonable skill, care, and diligence in obtaining the requested insurance and may be sued in tort for negligent failure to procure that insurance. *Busey Truck Equipment, Inc. v. American Family Mut. Ins. Co.,* 299 S.W.3d 735, 738 (Mo. Ct. App. 2009) (citing *Parshall v. Buetzer,* 121 S.W.3d 548, 554 (Mo. Ct. App. 2003)). "An agent or broker who unjustifiably and through his fault or neglect fails to obtain the requested insurance will be held liable for any damages resulting from such failure." *Busey Truck Equip.,* 299 S.W.3d at 738 (citing *Zeff Distr. Co., Inc. v. Aetna Cas. & Surety Co., Inc.,* 389 S.W.2d 789, 795 (Mo. banc 1965)); *see also* Couch on Insurance 2d, § 25:47 at 371-72 (Dec. 2020).

To prevail on a claim of negligent failure to procure insurance, the plaintiff must plead and prove that (1) the agent agreed to procure, for compensation, insurance from the insurance company, (2) the agent failed to procure the agreed-upon insurance and, in so doing, failed to exercise reasonable care and diligence, and (3) ***as a result, the plaintiff suffered damages***. *Busey Truck Equipment,* 299 S.W.3d at 738; *Haynes v. Edgerson,* 240 S.W.3d 189, 195 (Mo. Ct. App. 2007) (emphasis added). Thus, the plaintiff must prove that he actually incurred damages as a result of the broker or agent's failure to procure the insurance as requested. *See Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 195 (Mo. Ct. App. 2010).

9

Missouri courts do not hold an insurance broker liable merely for a failure to procure the requested insurance. "If it did, then the rule would not be 'a broker who through his fault or neglect fails to obtain the requested insurance will be held liable for *any damages resulting from such failure*' but would be 'a broker who through his fault or neglect fails to obtain the requested insurance will be held liable for that amount of requested insurance.'" *See Extended Stay Inc. v. Am. Auto. Ins. Co.,* 375 S.W.3d 834, 843 (Mo. Ct. App. 2012) (quoting *Busey Truck Equip.,* 299 S.W.3d at 738). The failure to procure has to manifest itself in damages that are actually attributable to the agent's failure to procure the insurance product as requested. *Id.*

Similarly, the elements of a breach of contract in Missouri are (1) the existence and terms of a contract; (2) that the plaintiff performed or tendered performance pursuant to the contract; (3) breach of contract by the defendant; and (4) damages suffered by the plaintiff ***as a result of the breach***. *See Moore v. Armed Forces Bank, N.A*., 534 S.W.3d 323, 327 (Mo. Ct. App. 2017) (emphasis added). Necessary to both causes of action—i.e., negligent failure to procure insurance and breach of contract—is that the plaintiff suffered damages as a result of the defendant's conduct. *See Extended Stay Inc.*, 375 S.W.3d at 841 (negligent failure to procure insurance); *Moore*, 534 S.W.3d at 327 (breach of contract).

Boulevard RE alleges that BMG told Mixon to procure insurance for it as a "named insured, loss payee, additional insured, and mortgagee" and Mixon failed to do so, thus causing Boulevard RE's damages. Doc. [40] ¶ 4. Therefore, to establish liability under either contract or tort theory, Boulevard RE must show that Mixon's alleged failure to procure the insurance as requested caused Boulevard RE to suffer pecuniary damages. Both claims fail because Mixon's failure to procure insurance for the Property as requested did not cause the damages suffered by Plaintiff as a result of the alleged breach. Rather, Boulevard RE's pecuniary loss was caused by its exclusion from coverage under the Policy's Fire Protective Safeguard Endorsement.

Had Mixon procured the Policy in precisely the manner requested by BMG, and had the Policy issued with Boulevard RE listed as a mortgagee or other additional insured, Boulevard RE would nonetheless be in the same position in which it now finds itself—without available coverage under the Policy, due to the exclusion under the Endorsement. In *Berkley*, Boulevard RE sought reformation of the Policy, asking that it be listed as a mortgagee and additional insured. This Court held that such reformation would be futile because Boulevard RE was not a mortgagee, and listing it as such would void the Policy. Then the Court held that listing

10

Boulevard RE as an additional insured would likewise have been futile, because if Boulevard RE were listed as an additional insured, it "would be subject to (and precluded from recovering by) the Fire Protective Safeguard Endorsement." *Berkley*, 2020 WL 5632440, at *8.

Boulevard RE also alleges that Mixon breached its duty to use reasonable care when it failed to discover and notify Boulevard RE and/or BMG that Boulevard RE (1) was not a mortgagee; (2) could not be listed as a mortgagee on the insurance policy; and (3) was not listed on the policy as a mortgagee. Doc. [41] at 4. Had it known it was not a mortgagee, Boulevard RE argues, it could have taken different actions to protect its interest in the Property.

In support of this argument, Boulevard RE relies on *Bell v. O'Leary*, 744 F.2d 1370, 1372-73 (8th Cir. 1984), for the proposition that an insurance agent is charged with knowledge of his business, which includes an awareness of what facts render his clients ineligible for insurance coverage. In *Bell*, the plaintiffs asked the defendant, an insurance broker, to procure flood insurance on their behalf. *Id.* at 1371. The plaintiffs' mobile homes were subsequently destroyed in a flood. *Id.* When the plaintiffs submitted their claims to their insurer, the claims were denied because the homes were located in an "unincorporated area," and homes in such locations do not qualify for flood insurance coverage by the Federal Emergency Management Agency, which was the relevant insurer at the time under the National Flood Insurance Program.[2] *Id.* at 1372. The plaintiffs sued the insurance broker, and the district court held that the defendant was liable to the plaintiffs for the amount of the requested coverage, because he was negligent in not discovering and notifying the plaintiffs that their homes were ineligible for coverage. *Id.* at 1371-73. The Eight Circuit affirmed, stating that the defendant:

> held himself out to the public as one who had a superior knowledge of a specific area of business, insurance. As a professional, [the defendant] is charged with the ability to do more than simply fill out application forms. He is charged with knowledge of his business, which includes an awareness of what facts render his clients ineligible for insurance coverage.

*Id.* at 1373. According to Boulevard RE, just as the insurance agent in *Bell* was obligated to know that the location of the plaintiffs' mobile homes disqualified them from receiving insurance coverage, so too Mixon was obligated to discover and notify Boulevard RE that it was not a mortgagee and could not be listed on the policy for that reason. Doc. [41] at 4.

---

[2] The requirement that an insured property reside in an "incorporated area" was codified in the Code of Federal Regulations. *Bell*, 744 F.2d at 1372 (citing 44 C.F.R. § 59.22(a)(4) (1983)).

11

Mixon seeks to distinguish *Bell* from the case at bar, arguing that whether Boulevard RE was a "mortgagee" was not something of which Mixon, as an insurance broker, was charged with having knowledge. Doc [43] at 6. That is because *Bell* extends only to matters regarding the "insurance business," such as whether an unincorporated area is eligible for flood insurance under applicable regulations. *See id.*; *Bell*, 744 F.2d at 1372–73 (citing *Butler v. Scott*, 417 F.2d 471, 473 (10th Cir. 1969)) (noting that an insurance agent "is charged with knowledge of his business, which includes an awareness of what facts render his clients ineligible for insurance coverage"). By contrast, an entity's status as a mortgagee is not a question of fact falling within the normal zone of knowledge of the average insurance agent, but rather, is a complex question of law, outside the purview of an insurance professional. Doc. [43] at 6. Mixon notes that in the *Berkley* litigation, Boulevard RE's attorneys argued that it was in fact a mortgagee, and it took this Court to determine that it was not a mortgagee under Missouri law. *Id.* at 7; Doc. [40] at 3.

The Court agrees with Mixon, and finds that Mixon had no duty to know or find out whether Boulevard RE was a mortgagee under applicable state laws. *See Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Midwestern Gen. Brokerage, Inc.*, 2007 WL 1529011, at *6 (W.D. Mo. May 23, 2007) (The existence of a duty on the part of an insurance broker "is a question of law for the Court to decide."). Boulevard RE is correct that *Bell* demands more of an insurance agent than "simply fill[ing] out application forms." *Bell*, 744 F.2d at 1373. But there are two key distinctions between *Bell* and the case at bar. First, whether the properties in *Bell* were eligible for flood insurance is a question that lies within the heartland of issues an insurance professional would be expected to know, *i.e.*, relevant insurance-related federal regulations. As the Eighth Circuit said, the insurance broker in that case was found liable because he "held himself out to the public as one who had *superior knowledge of a specific area of business, insurance*." *Id.* (emphasis added). Meanwhile, here, it took this Court to examine the complex legal issues involved and finally conclude that Boulevard RE could not be a mortgagee under the laws of the state of Missouri. The second difference is the ease with which the insurance agent in *Bell* could procure the information. The rule excluding unincorporated areas from flood insurance eligibility was published periodically in the Code of Federal Regulations, and was readily accessible to the agent. *See id.* at 1372-73. By contrast, the legal status of Boulevard RE in relation to the Property was not something that a non-lawyer such as Mixon can reasonably be

12

expected to have known, or to have discovered via a quick perusal of applicable regulations. The Court will not hold Mixon to such a standard.

### C. Mixon did not have a duty to explain to Boulevard RE the contents or import of the Fire Protective Safeguard Endorsement.

While Boulevard RE admits that non-compliance with the Fire Protective Safeguard Endorsement would have prevented Boulevard RE's recovery under the Policy, had it been listed as an additional insured, it asserts that Mixon may nonetheless be liable for failing to properly describe the Endorsement. *See* Doc. [41] at 6-7. The Court disagrees.

Plaintiff asserts that Mixon had a duty to explain the Fire Protective Safeguard Endorsement and to adequately stress its importance to BMG or Boulevard RE. However, Boulevard RE cites to no legal authority supporting the theory that it is an insurance broker's duty to inform an insured of the insurance policy's exclusions, conditions, or endorsements. Nor could it have, as Missouri courts have consistently disclaimed an insurance broker's duty to advise the insured on the terms of an insurance policy. *See In re Brauer v. Bankers Life and Cas. Co.*, 2016 WL 4083480, at *2 n.2 (W.D. Mo. Aug. 1, 2016) (citing *Emerson Electric Co. v. Marsh McClennan Co.*, 362 S.W.3d 7, 12-13 (Mo. 2012); *Wilmering v. Lexington Ins. Co.*, 678 S.W.2d 865, 872 (Mo. Ct. App. 1984) ("[A]n insurance agent or broker does not have an obligation to explain the policy to the insured."); *Murphy v. Northwest Mutual Ins. Co.*, 2005 WL 1421789, at *4 (W.D. Mo. June 13, 2005) (same); *Busey Truck Equip., Inc.*, 299 S.W.3d at 738 (same). Missouri courts do not require insurance agents to explain all of the particulars of an insurance policy.

> We have been cited to no case, and have found none, which imposes upon the broker a further duty to explain the policy to the insured. The cases which have dealt with such a duty have all found no such duty to exist . . . The insured has an obligation to advise himself of his purchase and while that obligation is less exacting as to insured's own representative and broker that "does not mean that an insured can close his eyes and go on forever and act as an incompetent ward with the [agent] as his guaranteeing guardian."

*Wilmering*, 678 S.W.2d at 872(internal citations omitted) (quoting *Kap-Pel Fabrics, Inc. v. R. B. Jones & Sons, Inc.*, 402 S.W.2d 49, 58 (Mo. Ct. App. 1966)) (an insurance agent was not liable for failing to inform an insured of a watchman warranty provision in the insurance contract); *see also Matthews v. Schumacher*, 660 S.W.2d 357, 358 (Mo. Ct. App. 1983) (an insurance agent has no duty to inform an insured that it must pay insurance premiums within ten days of the due

13

date to merit insurance coverage). Missouri courts also hold insureds responsible for reading and understanding the contents of a policy. *Binkley v. Palmer,* 10 S.W.3d 166, 171 (Mo. Ct. App. 1999) ("[A] party who is capable of reading and understanding a contract is charged . . . with knowledge of the contents of those agreements."). And insureds in Missouri are generally bound by all of a policy's provisions, exclusions, and endorsements, whether they have read the policy or not. *See State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apartments, L.C.*, 572 F.3d 511, 515 (8th Cir. 2009).

Finally, while Boulevard RE does not bring an independent claim of negligent misrepresentation, it does allege that Mixon misrepresented the terms and conditions of the policy, including the Fire Protective Safeguard Endorsement. Doc. [27] at 4. Boulevard RE maintains that Mixon misled BMG into believing that BMG was doing everything required to comply with the terms of the Policy, and that Mixon's misrepresentations thus caused Boulevard RE's damages. Boulevard RE again provides no citations to supporting case law for this point.

In support of its argument that Mixon misled BMG as to the contents of the Policy, Boulevard RE points first to the insurance quote provided by Mixon to BMG. In the quote, Mixon outlined the "Warranted Property Conditions." Doc. [41] at 7. The section included (1) a requirement that the insureds maintain a central alarm system; (2) a prohibition on the use of pyrotechnic displays or foam machines at the Property; (3) a requirement that the electricity in the Property be on and functioning; (4) a requirement that the Property have operating circuit breakers; and (5) the requirement that it have a kitchen hood system. *Id.* However, no mention was made regarding the Fire Protective Safeguard System, the need for a sprinkler, or that said sprinkler must be in the "on" position. *Id.* at 7–8; Doc. [42] at 2, ¶ 4.

Mixon contends that the insurance quote was not intended to provide Boulevard RE with all of the terms, conditions, and exclusions in the insurance policy, but was merely a summary of the offered policy. Docs. [42] at 2 ¶ 4; [43] at 11. Thus, Mixon's failure to include information regarding the Fire Protective Safeguard Endorsement in the initial insurance quote does not give rise to Mixon's liability for misrepresenting the terms of the Policy. The Court agrees.

The insurance quote does provide an extensive list of the requirements needed for the insureds to remain compliant with the Policy. In total, the insurance quote lists 16 conditions for the Property to merit insurance coverage. Doc. [27-2] at 7-8. And the policy's conditions involving the Fire Protective Safeguard Endorsement are absent from the insurance quote. But

14

the insurance quote is not the ultimate authority on the terms of the Policy; the Policy itself provides the last word on the matter. Under Missouri law, an insured "has a duty promptly to examine its policy." *State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apartments, L.C.*, 572 F.3d 511, 515 (8th Cir. 2009) (citing *Jenkad Enters., Inc. v. Transp. Ins. Co.*, 18 S.W.3d 34, 38 (Mo. Ct. App. 2000)). Missouri courts have long noted that summaries of the contents of an insurance policy may be found in related documents such as insurance quotes or declarations pages, but that such abbreviated summaries are "subject to refinement and definition in the body of the policy." *Johnson v. Safeco Ins. Co. of Ill.,* 983 F.3d 323, 333-34 (8th Cir. 2020) (citing *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617(Mo. 2017).

The insurance quote indicates that it is "GOOD FOR 30 days" and is "NOT TO BE USED AS PROOF OF INSURANCE," and it nowhere states that it includes all of the Policy's terms, conditions, and exclusions. Doc. [27-2] at 2. It is clear that the insurance quote is nothing more than a snapshot of the offered policy, and there is nothing in the quote that would lead an ordinary person of average understanding to believe that the quote was anything more than an abbreviated description of the policy on offer. Meanwhile, the Fire Protective Safeguard Endorsement is prominently displayed in the Policy itself, and its contents are clear and unambiguous. Thus, BMG's and Boulevard RE's alleged reliance upon Mixon's insurance quote, rather than the contents of the Policy itself, was not justified. The contents of the insurance quote do not give rise to a genuine dispute of material fact as to whether Mixon misrepresented the terms of the insurance policy to Boulevard RE.

Boulevard RE also asserts that Mixon misled them about the requirements of the Policy by providing BMG with a checklist of items to review at the Property, purportedly to ensure compliance with the Policy, which allegedly did not include any reference to the Fire Protective Safeguard Endorsement or the sprinkler system. Doc. [41] at 8. Boulevard RE asserts that the checklists gave BMG and Boulevard RE the impression that they were doing everything necessary to remain in compliance with the insurance policy, when that was not the case. *Id.* Mixon counters that Boulevard RE does not cite evidence in the record that supports this allegation. Doc. [43] at 11-12. The Court agrees.

Boulevard cites to the deposition testimony of BMG's manager, Courtney Hoffman. *See* Doc. [40-4]. Hoffman testified at her deposition that Bill Mixon[3] created a form, and that she

---

[3] Bill Mixon was the agent at Mixon who worked with BMG; he is now deceased Doc. [40-4] at 2.

15

used that form when she performed inspections of the Property. *Id*. Hoffman further testified that she performed an inspection of the Property every month, and filled out the form while she did so. *Id.* But at no point did Hoffman testify that Bill Mixon asked her to complete the form, or that Mixon represented to her that the purpose of the form was to ensure compliance with the Policy,[4] and most saliently, she provided no testimony as to the contents of the form. There is no testimony to suggest that the form did not include any reference to the sprinkler system. In short, viewing the deposition evidence in the light most favorable to the non-moving party, as the Court must, there is nothing in Hoffman's testimony from which one could draw a reasonable inference (or any inference whatsoever) as to the contents of the checklist. Furthermore, there is no other evidence in the record that could establish the contents of the alleged form. Hoffman testified that she kept copies of the checklist, and that such copies had been provided to counsel (Doc. [40-4] at 2), but Boulevard RE did not file a copy of any such checklist. Hoffman's testimony alone is vague, and provides no support regarding Boulevard RE's claims on the subject.

Because Hoffman's statements fail to establish either the contents of the checklist or whether Mixon used the checklist to verify BMG's compliance with the terms of the Policy or another purpose, Mixon argues that information regarding the checklist allegedly provided by Mixon to BMG should be excluded from this Court's determination on the instant Motion for Summary Judgment. Doc. [42] at 3 ¶ 5. The Court agrees. A "court must disregard a non-moving party's factual opposition to summary judgment if the non-moving party failed to support its opposing facts with citations to the record." *Deptula v. Amacker, L.L.C.*, 2011 WL 3235714, at *1 (E.D. Mo. July 27, 2011) (citing *McGee v. Nat'l Healthcare Corp.*, 2009 WL 3335102, at *1 (E.D. Mo. Oct. 15, 2009)). The testimony cited by Boulevard RE regarding the checklist does not create a genuine issue of material fact over whether there was a material misrepresentation regarding the insurance policy's requirements.

As noted *supra*, summary judgment is appropriate where the moving party has shown "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S.

---

[4] The Court notes that, even if Hoffman had testified as to what Bill Mixon told her regarding the form, such testimony would be inadmissible hearsay subject to no exception under Rules 803 or 804 of the Federal Rules of Evidence, and therefore not properly considered for purposes of summary judgment. "Only admissible evidence may be used to defeat [a summary judgment] motion[.]" *Henthorn v. Capitol Communications, Inc.,* 359 F.3d 1021, 1026 (8th Cir. 2004).

at325. Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed. R. Civ. P. 56(e). To create a genuine issue of material fact, the nonmovant must do more than present *some* evidence on a disputed issue. As the Supreme Court stated in *Anderson,* 477 U.S. at 249-50, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted). Here, the testimony offered by Plaintiff is not sufficient for a reasonable jury to find in Plaintiff's favor.

### III. Conclusion

For the foregoing reasons, the Court finds that Mixon is entitled to judgment as a matter of law on both counts of Boulevard RE's First Amended Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Mixon's Motion for Summary Judgment (Doc. [34]) is **GRANTED**.

**IT IS FURTHER ORDERED** that Mixon's Motion to Amend the Case Management Order (Doc. [31]) is **DENIED** as moot.

A separate Judgment will accompany this Order.

Dated this 30th day of March, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

17